DANIEL CHISHOLM, administrator, *vs.* OLD COLONY RAILROAD COMPANY.

Suffolk.    March 8, 9, 1893. — April 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Personal Injuries — Gross Negligence — Statute.*

The plaintiff's intestate, an employee of a telegraph company, was injured by a train upon the road of the defendant, while endeavoring to remove a telegraph pole which had fallen partly across the defendant's tracks.   The evidence showed that the engineer of the train was in his place and looking ahead, and that before reaching the pole the whistle had been sounded, the brakes applied, and the engine " given sand," and that the other employees of the telegraph company had been warned by the whistle and by the shouts of their fellows and had got out of the way; but it did not show just how soon the engineer or fireman became aware that the end of the pole was upon the tracks.   *Held*, that there was no evidence to warrant a finding that the engineer or fireman was guilty of gross negligence in failing to stop the train sooner.

TORT, to recover for the death of the plaintiff's intestate, James McKiever. The action was brought within a year from the time of the accident, and one count of the declaration stated that it was brought for the benefit of the widow and children of the deceased.

At the trial in the Superior Court, before *Sherman*, J., the plaintiff introduced evidence tending to show that at the time of the injury which caused his death the deceased was in the employ of the Western Union Telegraph Company, and was engaged in putting up a new line of poles upon the location of the defendant company between Readville and Boston. As the deceased, together with ten or twelve others, was endeavoring to put up into place a heavy telegraph pole by means of pikes, the pole slipped and fell across the inner tracks and part way across the outer track of the defendant, and upon the foreman in charge of the work. A portion of the men went to the assistance of the foreman, who was under the pole, and the deceased, with three or four others, went to the top of the pole and attempted to raise it and remove it from the tracks. Before they had succeeded in removing it the plaintiff's intestate was struck by an express train of the defendant upon the outer track, and so badly injured that he died a few minutes afterward. As the train approached, the fireman saw the pole falling, but he did not testify that he knew it reached so far as to lie upon the outer track. The engineer, who was not called as a witness, was in his seat, looking ahead, but it did not appear how soon he was aware that the end of the pole was upon the track. Before the train reached the pole the whistle had sounded and the engineer had put on the brakes and "given the engine sand"; and others of the gang of workmen had heard the whistle, and had shouted to warn those who were at the end of the pole, all of whom except the deceased got out of the way. At the close of the plaintiff's evidence the presiding justice ruled that the plaintiff could not recover, and ordered a verdict for the defendant, to which ruling and order the plaintiff excepted, and the presiding justice reported the case for the consideration of this court.

*C. G. Fall*, (*F. F. Gerry* with him,) for the plaintiff.

*C. F. Choate*, Jr., (*J. H. Benton*, Jr. with him,) for the defendant.

ALLEN, J.  There was nothing to show any negligence or carelessness on the part of the defendant corporation, or any general unfitness of its servants or agents.  It was therefore incumbent on the plaintiff to prove gross negligence or carelessness on the part of the engineer or fireman.  Pub. Sts. c. 112, § 212.  There was no evidence which would sustain this burden.  The alleged gross negligence consists in not stopping the train sooner.  Merely seeing one or more men on a railroad track at a distance, unless they appear to be helpless or disabled, does not ordinarily make it the duty of an engineer to stop a train.  Especially where men are at work upon or by the side of a railroad track, it may ordinarily be expected that they will look out for the trains.  In this case the end of the pole fell across, or partly across the track, but it does not appear how soon the engineer was aware that the end of the pole was upon the track.  The fireman, though he saw the pole in the act of falling, does not testify that he knew it reached so far as to lie upon the track.  According to the fireman's testimony the engineer was in his seat, looking ahead.  Some three or four men were at the small or top end of the pole trying to get it off the track, and apparently would have succeeded in a moment or two more.  The train approached, the whistle sounded, others of the gang of workmen shouted to warn those who were at the end of the pole, and all but McKiever got out of the way.  Before reaching the place the engineer had put on the brakes and "given the engine sand."  He was not called by the plaintiff as a witness.  Upon the evidence, it is at best merely conjectural whether he saw or could have seen anything making it grossly negligent not to apply the brakes sooner.  Without going so far as to attribute negligence to McKiever in remaining upon the track, there is no evidence to warrant a jury in finding the engineer or fireman guilty of gross negligence towards him in failing to stop the train sooner.

*Judgment on the verdict.*